And we'll call the, uh, don't want to let everybody get out of there. We will call the next case, uh, United States of America v. Kenneth Schneider. Mr. Batchman. Good afternoon, your honors, may it please the court, Howard Batchman representing defendant appellant Kenneth Schneider. I'd like to reserve three minutes for rebuttal. That request will be granted. Thank you. Your honors, in the Mortensen case, the U.S. Supreme Court recognized an innocent round trip exception for sex related travel offenses. In this case, Judge Sanchez properly applied Mortensen to enter an acquittal on count two on the charge of transporting the alleged victim, Roman Zavrov, home to Russia to return to his family on a summer vacation. But Judge Sanchez committed reversible legal error in failing to likewise grant an acquittal on count one. Can we go to the factual premise of your assertion, which is that there was an innocent round trip, and have you speak specifically to the argument I understand the government to be making that, uh, Mr. Schneider wasn't on the return leg of a round trip. He went, he dropped the victim off, and then he went about his business, including going back to Moscow, right? No, that's not correct, your honor. There's no evidence whatsoever that defendant Schneider ever left the United States. The testimony from Roman Zavrov, 499A of the appendix, is that the defendant stayed with him during the entire visit in Berlin. But then on cross examination, let me just lay all the evidence out, take me one moment. Then on cross examination, Zavrov said that Schneider visited his parents' home from time to time while Zavrov was staying there. Defendant Schneider's testimony was that he spent a few days in Berlin in the beginning of the trip, then went up to New York where his law firm was located, and then came back to Berlin at the end of the trip. But there's no evidence whatsoever that he left the country or committed any criminal acts whatsoever during that trip. Now, there was, even accepting Mr. Schneider's assertions about what he did, he was not pleasure tripping, vacationing. He was on a business trip, dropped Zavrov off, goes to New York, does business. Then he comes and gets Zavrov to take him back. They say that's not the case. Mortensen doesn't apply. That's what I understand them to be saying. Can you restrain me if I'm wrong? But why isn't that factual distinction that they draw meaningful? The reason it's not meaningful, Judge Jordan, is that the vacation aspect of Mortensen was critical to that case because the business in which the defendants were involved was the business of operating a house of prostitution. Therefore, if the defendants in Mortensen were involved, they would not have had an innocent trip. It had to be the fact of the vacation that made it innocent. But the fact that work by someone who's employed as an attorney for an American law firm in Russia does some work while he's back obligated to a company, a lot of people wouldn't view legal work as innocent, but we can get past that, I guess. I suppose your real response is that the fact is it's not that we should look at Mortensen as saying there's a vacation exception. You should look at Mortensen and say the purpose of the trip was not for the business that you were engaged in. Was there a complete break of the criminal wrongdoing during the time of the journey away from the place where the wrongdoing was taking place and then back to it? The federal government was arguing in the Mortensen case, helpfully, that the briefs filed in the U.S. Supreme Court in Mortensen are available over Westlaw. If you read the federal government's brief, what they say is of course the reason people come home from vacation is to get back to work. Therefore, the brothel owners, when they were coming back to Grand Island, Nebraska, which by the way is not an island, it's a city, from Salt Wyoming on the way, or perhaps Colorado, that the purpose of heading back to where they lived was to get back to work running the brothel. The Mortensen case, the charge in Mortensen back in 1940, actually it was 1940, the case was decided in 1944, the charge at that time was under the Original Man Act, and the corollary to that act, which involved the transport of an individual for purposes of sexual abuse or with the intent to engage in sexual... the corollary to that is a statute that was part of COUNT II, which was Section 2421, correct? That is correct. Okay, so if you agree with me that the two statutes that you compare is the Original Man Act and the one in COUNT II, which was... which you prevailed on... Which is the successor to the Man Act, correct. Okay. What you have... what remains is 2423B, which is a different statute. It has the same language that was involved in the Man Act, which is the for the purpose of, but a different statute in that it goes to the individual's travel himself. That is correct. However, it does contain the identical language, the purpose of language that the current version of the Man Act itself lacks, by the way, and furthermore, at least three federal courts of appeals have found that Man Act precedent is instructive... I think that's accurate. I think that's accurate, but isn't your problem here... isn't your problem here in really trying to apply the Mortenson-Rontrip exception to 2423B, the standard of review? When we're reviewing, and we're in the same shoes as the district court was when you had your motion in front of that, when we're reviewing this question, we have to ask, could any rational juror... could any rational juror have found that Mr. Schneider had at least one of his purposes to sexually abuse Zavrov when they got back to Moscow? Isn't that really the question we have, and isn't that the posture this case is in? We disagree that that is the inquiry under Mortenson. In fact, that's what your inquiry we have here. Well, that is the inquiry that Judge Sanchez undertook by artificially severing the return leg of the trip. Not necessarily, and I apologize for interrupting, but I'm not sure you're getting to the point here, because I understand the judge to have accepted the government's argument that 2423B focuses on the defendant, as opposed to the original Mann Act count that you... the original Mann Act and the Mann Act as amended that you prevailed on with the other count, and that there's a distinction to be made because it focuses on the defendant. So is that just... how is Judge Sanchez wrong about that? Both statutes focus on the intent of the defendant. The second count focuses on the intent of the defendant in transporting the minor. The first count focuses on the intent of the defendant in transporting himself, and the government makes the argument that we're not looking at what the transport piece here, we're talking about what's in... when we look at 2423B, we talk about what's in Schneider's mind, and what's in Schneider's mind is to further inculcate, groom, and encourage the relationship of dependence that the victim has, and that trip... it's not innocent. And that... and that... and Judge Sanchez evidently accepts that. Are we wrong to accept that? I think we are wrong in that last regard, which is that Judge Sanchez writes in his opinion on the post-trial motions, there's no evidence that Roman Zavrov would have refused further sexual activity without the trip to Philadelphia. Furthermore, before the case went to trial, he excluded all the grooming evidence. Hold on just a second, Mr. Ashman. How does the fact that there may not be evidence that Zavrov would have rejected him on the return speak to what Schneider had in his mind about wanting to groom, wanting to encourage, wanting to deepen the relationship of dependence? How does that speak to that? What I'm trying to say is that if you accept that Mortenson applies to 2423B, then you cannot artificially look at the return leg only. You have to look and see what is the predominant purpose of the trip. And in Mortenson, the Supreme Court said we note the government did not charge the outbound leg leaving to go to Utah. And similarly here, the government could have charged the outbound leg leaving to come from Russia to Philadelphia. I might be misunderstanding the government. I take their argument to be not that they're separating the legs of the trip, but they're saying the trip from Schneider's perspective isn't innocent. It's not an innocent trip. It's not a pleasure trip. It's not even an innocent business trip. It's a trip which, among other things, is designed to further the relationship with Zavrov, deepen his dependence, and create more of that sexual relationship that he wants. And doesn't that get back to my question, is that the question I addressed, and I don't think you fully answered it, is our standard of review is could any rational juror have found that that was one of the purposes? As in Mortenson, however, the question of the innocent round trip was not charged to the jury in either this case or in the Mortenson case. So that issue was decided by the appellate court based on the record that had existed following trial. And what the U.S. Supreme Court said, I know I'm repeating myself, is that you can't just focus solely on the return back. You are repeating yourself. I want to see if we can get you to grapple with, I understand that if we accept your argument that this was an innocent trip, then you've got a pretty good Mortenson argument. I want to try to get you to come to grips with their assertion that it's not innocent. Let me say something new then. What the evidence shows is that every summer, Kenneth Schneider made a trip to the United States to visit his parents. That happened within the supposedly extended statute of limitations, which of course is our second argument. And so the federal government could have charged his return back to Russia every one of those years without Zavrov. Now the only way that Zavrov could come to the United States, which is what Zavrov wanted to do on his own, that was his goal, to become famous in the United States, was as a result of Kenneth Schneider agreeing to accompany him. And Zavrov's parents understood that, and they went to the United States Embassy and said, you know, the only way that Zavrov could come back... That's precisely their argument. Their argument is, he made a promise to Zavrov's parents. He had to make good on the promise or Zavrov wasn't going to be living in his house and this was part and parcel of keeping Zavrov in his home to satisfy his sexual desires. So that's the argument they're making to say it's not innocent. Can a rational jury accept that? Well again, I always circle back to the fact that we don't think he can focus artificially on the return leg. But if he can, then the question is, you know, he's been in the United States. It's just, when he went back to his family, Schneider had no way of knowing, there's no obligation on Zavrov to return to live with Schneider whatsoever and return back to Russia. Isn't your best argument that, in response to Judge Fischer's question, that can't the jury think of that purpose to be at least one of his purposes? That you've got to take it a step further and you've got to say that, you look to the statute and you say, it's got to be, one of his purposes has to be, let's see now, with the intent that he engage in illicit sexual activity. And I presume your argument would be, when he came to the United States, that was not one of his purposes. And going back to Russia, that's not specifically one of his purposes. Right, because there's no obligation on Zavrov to return to live with Schneider following the week that he spent with his family. Let me give you a couple more moments here, because I'd like to hear a little bit about your statute of limitations argument. How can you really argue here that the statute for which he was charged in the remaining count did not involve sexual abuse? What this court's recognized in the Pendleton decision from 2011 is that 2423B, unlike 2423C, which came into effect in 2003, is the offense is complete when the travel occurs. And that this is a sex-related travel offense that is complete before any sexual abuse takes place. Because again, just focusing on even the actual facts of this case, Zavrov went back with his family for a week, so the travel was done before any sexual conduct is alleged to have begun again back in Russia. This is far beyond the five-year statute of limitations. And what we say is that under the statute that extends the statute of limitations, you can't have sexual or physical abuse of a child under the age of 18. And that that can describe certain types of offenses under 2423B, but only if you focus on conduct that occurs once the criminal act is complete. 2423B can be used to convict somebody if there's a make-believe victim. It can be used to convict somebody if he never successfully succeeds in his goal. Doesn't that argument require you to ignore the language in 2423B for the purpose of engaging in a sexual act? I mean, you want us to limit our evaluation of the statute of limitations to the August 21st date, the day of the flight back to Moscow. But the case, the count that he was charged with, and what the jury convicted him of, involved travel for the purpose of engaging in a sexual act. Right, but the question is, did it involve, was it an offense involving the sexual or physical abuse of a child under the age of 18? And what I'm saying, too, is the offense under Pendleton, the offense is complete. When you get on the plane, the latest one, the plane lands, and this conduct did not occur during that travel. Is that a separation of mens reis and actus reis that Judge Aldisert said don't do when he wrote Tarkarski? The Tarkarski case, we do rely upon in connection with his argument by acknowledging that this court has said that it could be a make-believe victim. I don't think Tarkarski, as I read it, had anything to do with expanding the statute of limitations. This is certainly a question of first impression. But he does talk about, you can't have an unnatural separation between those two things, the act and the mindset. But the act is not. The mindset here, the mindset is, I want to get my underage lover back to Moscow where I can enjoy sex with him. That's the assertion of the government. Why isn't it appropriate for them to say, look, that is the purpose, that's the mens rea, that's happening, that's part of the mens rea, I should say, that's going on, that's for the purpose of, and it connects up with the act, and therefore, with those things together, as Judge Fischer has pointed out, you're taken out of the five-year statute. Well, what we say the act is, is the transportation of oneself. Yeah, I know, you're just the wheels down. But you don't really have any authority for that split, do you? Well, what I'm saying is that there is not a split. We say both the intent and the act focus on that the intent is what you hope to do. It's not doing it. And if that's involving thinking about perpetrating sexual abuse of a child is not what the statute says for extending the statute of limitations. It says an offense involving the sexual or physical abuse of a child. And we think that that requires sexual or physical abuse of a child to actually be required by the offense itself. I don't want to talk about statute of limitations, take you back to the main issue. Are we focused on the right language? Should it be at least one of his purposes, or should it be a dominant purpose? The Supreme Court in Mortenson did use the words dominant purpose. I think that that's what the charge to the jury here was. I know that some courts have criticized that language as maybe being imprecise or whatever, but we think that we agree with you. That's what Mortenson says. And we also think that the question of the innocent round trip exception is separate and apart from deciding how a jury should be charged, whether it's motivating purpose or dominant purpose or whatever. But it certainly does have to be an important purpose. And we think that if you look at the purpose of the trip as a whole, that there is no evidence that Kenneth Schneider took this trip, which he takes every year anyway. No evidence? The government posits that there is evidence, that there is evidence from testimony that said the only reason Zavarov was in Schneider's apartment in Moscow was because he was promised, the parents were promised, the boy was promised, I can make you a ballet star. And he was promised, among other things, I can get you exposure to the ballet world outside of Moscow. I can get you to the United States. And that these things constitute representations, promises of a sort that he had to follow through on or he was going to lose his victim. That's evidence that they point to. How is that not evidence? Well, that certainly is evidence that they point to. What I meant was that it was Schneider's intent on taking this specific trip was to perpetrate sexual abuse rather than for an innocent vacation for him. And I think that the only way, according to Roman Zavarov's parents, that he would be enabled to continue going to the Bolshoi School was by either living in the dormitories or living close enough to the dormitory rather to the school that he could go by himself. And so Schneider did at least offer that opportunity to be able to continue to attend the school. All right, Mr. Basham, we'll have you back on your bike. Thank you. Ms. Morgan. Thank you, counsel and members of the panel. Mortensen should not apply to count one. And as this court has already pointed out, this court has to apply a highly deferential standard to the finding of the jury and view the evidence in the light most favorable to the prosecution. What are the role of the circuit courts that suggest that Mortensen should apply in this kind of analysis role? Well, I'm not aware of any case extending Mortensen to Section 2423B, first of all. Vang doesn't? No, Vang does not, actually. That's a case cited by the defense out of the Seventh Circuit, and it does not extend Mortensen. In that case, the defendant suggested that Vang should rely on the Mortensen holding of a dominant purpose, and the Vang court rejected that suggestion. They did not apply any type of round-trip analysis, so Vang does not apply Mortensen. But the reason that they are distinct is because under Mortensen, the court was analyzing the man act, which is travel with the intent that the person engage in prostitution. Section 2423B, by contrast, is a statute that is directed to more egregious conduct. It's directed toward travel with the intent to engage in specific types of sexual activity and with a minor. Is that enough to get you where you need to go, Ms. Morgan? I mean, plenty of courts have said that 2423B is an amendment to, it's a part of the man act that uses language that's similar in 2423B to language that's used in 2421, and if you're going to be consistent with 2421, if you're throwing 2421 out, you've got to throw 2423B out, too. You can't say, you know, either Judge Sanchez should have thrown them both out or thrown neither out, but to throw one out and say it's innocent and not throw the other out, there's just something fundamentally, not as a matter of jury deference, but just as a matter of reading the law, something fundamentally wrong with that. That's the argument I understand, at least in part, is being presented to us by your opponent. Why isn't that right? I mean, if 2421 was bad, why isn't 2423 bad using the same kind of language? Well, my response to that is twofold, Your Honor. First of all, 2421 speaks to prostitution or criminal sexual acts toward a person of any age. It does not limit itself to a minor, contrasted with section 2423B, which is limited to sexual conduct with a minor. But more importantly, it's the government's position that the district court should have kept both counts, and here's why. There is a drastic factual distinction between the facts in Mortenson and the facts that we have in this case. You didn't file a cross appeal, did you? We did. We filed a cross appeal and then we withdrew that appeal. We decided to put our eggs in this particular basket. So you can't really argue, you try to argue in your brief, but you really can't argue here that the court was wrong in showing on count two, can you? I intend to argue here that the court was correct in keeping count one, and the reason the court was correct in keeping count one is because of the factual distinction between these two cases. In Mortenson, you have a husband and wife who run a brothel, and Mrs. Mortenson decides that she wants to go visit her parents in another state, and they decide they're going on a trip. And the prostitutes who work for them, who in 1940s parlance are called girls, there's no indication that they're minors in the opinion, and I was unable to determine what their exact age was. How is the intent in that case of the husband and wife, when they're driving back, any different than the intent of Schneider here? Schneider argues, I'm innocently going to Pennsylvania. In that case, we're innocently going to see my mother-in-law, voluntarily, so I guess he liked her. And then they come back. And in that case, they're innocently going to see their mother-in-law, and it's the girls who say, hey, can we come along with you? The girls who pay their own expenses. One of the girls offers even to pay for transportation, but the Mortenson say, we'd be spending this money anyway, so you don't have to pay for transportation. They go, they have a vacation, they come back, they resume prostitution. Are you saying that the only reason that Zagoroff would have come to the United States is the coercion of Schneider? I mean, he did get to go to, you know, some sort of ballet camp or whatever it was. He did get to visit the United States. Two things that were things that he thought were good. I am saying that there is absolutely nothing innocent about this trip. This was a trip that was designed from day one. There was absolutely nothing innocent about this. The young man went to the rock school. He wanted to be a ballet dancer. He went to the rock school, which is a noted, and as I understand it, I mean, I don't know these things, but I understand it's a highly reputable school for dance. He was, he wanted to do that, and he had that chance. That's not innocent. I'm going to go to ballet school. It's not considered from the perspective of the child, as your Honor has pointed out. It's considered from the perspective of the defendant, and I think it's important to note that this is a ballet trip. This has to do with ballet, because from day one, this child was promised. On the videotape that the defendant was taking of this child he'd never met before, he was talking about, do you want to go to America? Have you been to America? Do you want to be a ballet star? Does that mean, Ms. Morgan, that there's, does your argument prove too much? Is there nothing that Schneider could have done with Zavaroff that would be counted as innocent? Because everything he would have done with them would in some form or fashion have been calculated to deepen his relationship. I mean, if that's the argument, doesn't that reach too far? It does not, Your Honor. So there's literally nothing he could have done that could have counted as not predominantly evilly motivated. With respect to this relationship, it's difficult to think of something that he could have done that was not motivated to groom the child. In terms of presenting promises, gifts, ingratiating himself to the child, which was the defendant. Suppose it was a nonspecific ballet, suppose it was a nonspecific ballet trip that was more akin to Mortenson in the sense that it was Disney World, and that's all? Those aren't the facts we have here, Your Honor. We have the defendant saying to the child, a child who lives in Russia at the time, would you like to go to America? If you are with me, I can make you a star. I can get you to America. I can get you to New York. You can be a ballet star. He offers that carrot and dangles in front of him from the first time they meet. This trip is all about the process of grooming this child to remain ingratiated so that he continues to engage in sexual activity with this adult man. Ms. Morgan, I want to go back to one of your initial statements. You said that the Mortenson exception does not apply here. Are you likewise arguing that we should not look at any of the Mann Act jurisprudence and interpretations of whether or not the Mann Act jurisprudence should be applied to these statutes that have come from other circuits? Well, again, Your Honor, I'm not aware of any case that extends this particular holding to any section 2423B. I agree with that. I understand there's a similarity in the language, but I will point out again that we're talking about a statute that is directed not generally to prostitution, not generally to sexual abuse, but to sexual abuse of a minor. That's not my question. I mean, excuse me, you said that the Mortenson exception, the Mortenson exception doesn't apply to this case. That is certainly one of our arguments. But it's a more narrow one. I don't want you to articulate it. Yes. Okay. And that's why I'm arguing about the distinction in facts between the two cases where you have what could be fairly characterized as an innocent round trip in Mortenson versus a trip with extremely nefarious purposes in this case where you have a defendant trolling a children's family to stay there because his family can't afford to keep them there, makes the family indebted to him by loaning them $478, which to them is two months' salary and to him as an attorney with a major law firm is a pittance, and then weaves all of these promises together about going to America at the same time that he's moving a 12-year-old he's never met before in his life into his apartment. Is 2423B clear or is it ambiguous? With regard to what, Your Honor? As to whether or not Congress wanted to consider this section as involving sexual abuse. I think it's quite clear. That's the mens rea of the crime. You have to travel with the intent to engage in a sexual act with a minor. Let me ask you this question. So let's say, have a hypothetical. I live in New York City in an apartment with a young ballet dancer. I pay for him to attend ballet school in New Jersey and I have a driver who drives him to class, to school every day. We only engage in sexual activity in my apartment in New York City. The school's performance of the Nutcracker is coming up and my protege is starring as the prince. So on the day of the performance, I drive him to school in New Jersey where no sexual activity occurs. We return to New York City that night and resume our normal course of activity. Have I violated 2423B? I think it would depend on the facts of the case. I think it would depend on whether that ballet program was interwoven into the grooming process for ingratiating the defendants to the child and it also has to be No ingratiation process in my hypothetical. I made a representation that I would pay for it and I'm paying for it and the facts are as I presented them. And it would be up to the jury to determine whether on that particular trip a significant or motivating purpose of that trip. That's the language used in the Hayward opinion in the Third Circuit. Whether a significant or motivating purpose doesn't have to be the dominant purpose. Whether a significant or motivating purpose of that trip It has to be a dominant purpose, right? You can't get away from the word dominant, can you? The language of the cases requires it to be a dominant purpose, does it not? The language of Hayward requires it to be a significant or motivating purpose. Well, I'm not just looking at Hayward. I'm looking at other cases, right? Including Supreme Court precedent that talks about a dominant purpose. That's the standard, is it not, that we need to look to? If you're referring to Mortensen? Well, Mortensen and the several cases that come after Mortensen including ones from this court which got summarily kicked back when Mortensen was attempted to be distinguished and the court made it real plain that we really meant what we said when we said you don't get to separate the back end of the trip from the front end of the trip. It's got to be a dominant purpose. I guess what I ought to be asking you is are you suggesting that later case law from this court has lowered the standard from dominant to significant? No, I think this court has simply interpreted what does a dominant purpose mean and it has provided the language a significant or motivating purpose as opposed to the dominant purpose suggesting that there's only one purpose and it has to be that one. Okay, so a purpose that is significant or motivating satisfies the a dominant purpose standard of Mortensen. Yes. Okay. So my trip, in my hypothetical, I would only be violating the statute if my trip to New Jersey was either a significant or motivating purpose or a dominant purpose. Correct. Which would be borne out by the facts of the case and what the relationship was and if things were promised or not promised, etc. It's fairly clear cut in this case that when you have a defendant on videotape talking to the child about his opportunity to be a ballet star in America and dangling that carrot in front of him and then going on that very trip and their ongoing relationship where he's engaging in sodomy and oral copulation with this child multiple times a week over the course of a year leading up to this trip there are discussions about if you stay with me I'll make you a star if you leave me your life will be ruined and your career will be destroyed. All of those are facts which indicate very clearly that this is not an innocent round trip and I think the language in Mortensen itself is very useful. It says, to be a crime the trip must be for the purpose of or as a means of effectuating or facilitating the commission of an illegal act. That is exactly what we have here. Let me ask you a question on a slightly different issue. The therapist notes came to light in which according to the notes themselves Zavaroff indicated concern that he had committed perjury and that that was according to the defense The defense later discovered evidence that required the district court to make an inquiry look into it but no evidence for hearing was given. Why don't you answer the assertion that it was an abuse of discretion when you've got notes that say hey I'm afraid of going away for 10 years that's something you really ought to look into if you're a district court judge. Your honor it was not an abuse of discretion and here's why. The first requirement if the defense is going to allege perjury is that they have to say what the perjury was. They were incapable of identifying any statement that was a perjury statement Of course their argument is of course we can't the notes aren't that specific but we know there's there's not just smoke here there's billowing smoke let us go in and we can try to identify that if you'd give us an evidentiary here. Well the fact of the matter was they were offered an additional deposition of the victim in the civil suit so that they could identify whatever this alleged perjury statement was and they declined that opportunity they didn't want to find out what the perjury statement was instead they wanted to bring it to light through the criminal case so that they could further subject the victim to cross-examination. In addition if you look at the notes that they're so heavily relying upon and your honor my time has expired if you look at these notes what you will see is that he makes reference to having made a false statement in the civil suit and he says that in particular and the notes are also replete with references to the defendant was my abuser the defendant molested me the defendant engaged in sexual conduct with me over the course of many years it's clearly not a concern about a statement that goes to the ultimate issue of fact in this case that's clear from the same notes they're relying upon to claim that there was some sort of perjury that occurred and if you look at the chain of events and the errata sheet that was subsequently submitted in the civil case it was clearly a concern about statements that the victim had attributed to the defendant's sister erroneously let me ask you and we allow Mr. Bashman some additional time so let me ask you about the statute of limitations question and you heard Mr. Bashman's argument and you've read his argument you know what's your position our position is that section 2423B is clearly a crime involving the sexual abuse of a child if congress had wanted to use the phrase has as an element congress could have done that congress instead chose to use the phrase involving which should be broadly interpreted based on its plain language you don't think there's a distinction is this a Bridges case no you mean in reference to the wartime right no it's obviously not what about the essential ingredient I mean is in fact the abuse of a child an essential ingredient of 2423 well it's the required mental state that the defendant has to be in when traveling it's not just a crime to travel it's a crime to travel for the specific purpose of engaging in sex with a minor and I found an additional case members of the panel which I didn't say in our brief but I'd like to direct the court's attention to it it's United States versus Vickers Vickers Vickers V I C K E R S 2014 case of the Western District of New York and while it does cite to the district of court opinion here it also has some really useful language I think this is a case in which the defendant was charged with 2423 A which is transporting a minor with the intent to engage in sexual conduct so very much analogous to 2423 B there's no actual sex as an element it's the travel with intent that is the crime and the court said when the defendant suggested that 3283 should not apply for the exact same reason being suggested here this involving language the court said quote defendant's argument is illogical and clearly misinterprets the use of the term involving in section 3283 by its terms section 3283 does not require that an offense consists of a sexual act between a defendant and a specific child end quote what's the site the site is 2014 Westlaw 1838255 it also says quote for this court to conclude that the offense is charged in the instant indictment did not involve the sexual or physical abuse of a child under the age of 18 would strain all logic and common sense and would be in sharp contrast to well settled law so I think that's that's useful language for a statute that is quite analogous to ours where you have travel with a certain type of intent or transporting a minor with a certain type of intent without requiring in the statute that there be actual sexual contact thank you okay thank you very much Ms. Morgan and Mr. Bashman if I can just begin by returning to the issue of grooming since that's been the subject of so much discussion today I think that it's worth noting that Judge Sanchez himself in this very case rules before the case went to trial that the federal government's proffered expert on the subject of grooming could not testify before the case went to trial at trial and found that the evidence about grooming would not assist the jury or fit this case because of the fact that maybe the expert witness wouldn't have helped but you're not suggesting are you that the evidence that reflects the desire to manipulate the desire to hold on to and to be somehow irrelevant to the case are you what I'm arguing and that goes to my second point on grooming is that it simply was not a theory that was affirmatively offered by the government as a result of the expert being kept down I thought that  evidence that the jury was showing this was psychological manipulation this was all part and parcel this was all the piece of the grooming that was going on and they were indeed pushing that and you're bothered by it and that's why you're opposed to some of the evidence that actually did get in well that was relevant to the charging count too which required compulsion to make a criminal under Russian law it's relevant to both isn't it I mean the point that I understood the argument to be you know the little figurines and the and the clip from the Nijinsky film as well as a bunch of other stuff were relevant to showing how this fellow Schneider was prepared to tell a 12 year old boy and older as he grew older stick with me or your life's going to be a wreck well I mean certainly that is one of the arguments that they made and there was evidence of that at trial what I'm saying however is that specifically arguing a point about grooming and using the word grooming I did not see that as one of their arguments that they were explicitly making a trial but they did make the argument at trial that the purpose of the trip was not as innocently suggested I go to Berlin every year but that it was part of the whole sort of nefarious scheme that it began with the recruitment and that it continued with the promises of making him into a star notwithstanding the Nijinsky film well then yes that was an argument that they made and that goes to my second point which is that Judge Sanchez and his post-trial decision writes that the government points to no evidence however justifying the inference that Zavrov would have refused to continue engaging in sexual activity with Schneider if he had not traveled to Philadelphia which as I understand it is Judge Sanchez saying that there is no evidence that Zavrov would have threatened to leave but but for the trip to Philadelphia right but I suppose that's part of what we can take into account but I thought the purpose of your adversary bringing this up was that it is part and parcel of their dominant purpose argument like that the inducement to come to America is part of the yes it is a dominant purpose from that is certainly their argument but our point is that in Mortenson itself as we observed in our reply brief brothel owners who take prostitutes on vacation trips are likely to engender a stronger bond with those employees than if they had not done so but the missing piece right I mean I'm totally with you on the analogy right the missing piece that's available here that's not available seemingly in Mortenson is I had a purpose and I made the purpose known for bringing Zabaroff to America it was you know to make him a big star as I had promised and that that promising and then delivering on it was all part of what I wanted to achieve back at home I'm not sure I understand what the question is that you asked me to respond to I don't mean to get involved brothel owners who were going to have their highest grossing prostitute walk out on them and they said don't go you know if you stick with us we'll take you to see the sites in Salt Lake City I'll adopt that I'm telling you it's going to be great we'll go to Parley Canyon we'll go all over I'll take you to Snowbird don't leave and not only that but if you stick with us we'll get you training for this other thing we know you don't want to be a prostitute forever they got a great dental hygienist school whatever it is if that had been it and then they had gone and come back would Mortenson be an innocent trip even though they did sightseeing or would it be a trip that was never really intended if the evidence was that the prostitute said the reason we stuck with this person was because of what we thought the person could do for us then I would agree that that would be perfect shifting the mindset to the victim and taking them to a new place      that but I would not agree with that and I would not agree with that at this time      with that at this time and I would not